FILED BY _____ **KS** D.C.

**Jun 3, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
## 21-20329-CR-COOKE/O'SULLIVAN
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

**vs.**

**TERESA DE JESUS AVELLANEDA,**

      **Defendant.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare Program (Medicare) was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services (HHS). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare program was divided into different "parts." Part A of Medicare covered certain eligible home health care costs for medical services provided by a home health

agency (HHA) to beneficiaries who required home health services because of an illness or disability that caused them to be homebound.

4.     Physicians, clinics, and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and the provider number of the physician or other health care provider who ordered the services.

5.     CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States. In the state of Florida, CMS contracted with Palmetto Government Benefits Administrators (Palmetto). As administrator, Palmetto was to receive, adjudicate, and pay claims submitted by HHA providers under the Part A program for home health services. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.

## Part A Coverage and Regulations

**Reimbursements**

6.     The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if:

(a) the patient was confined to the home, also referred to as homebound;

(b) the patient was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care (POC); and

(c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; that the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

**Record Keeping Requirements**

7.      Medicare Part A regulations required HHAs providing services to Medicare beneficiaries to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

8.      Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was: (i) a POC that included the physician order for home health care, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

9.     Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

10.    Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified HHA. The HHA would, in turn, bill Medicare for all services provided to beneficiaries by the subcontractor. The HHA's professional supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

**<u>Defendant and Related Entity</u>**

11.    Coral Home Care, Inc. (Coral Home Care) was a Florida corporation, located at 17680 NW 78 Avenue, Suite 101, Hialeah, Florida, that purported to do business in Miami-Dade County as an HHA.

12.    Defendant **TERESA DE JESUS AVELLANEDA,** a resident of Miami-Dade County, was the owner of Coral Home Care.

4

<u>COUNT 1</u>
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2.      From in or around April of 2015, through in or around July of 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**TERESA DE JESUS AVELLANEDA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.      to knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

**Purpose of the Conspiracy**

3.      It was the purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for home health services; (b) concealing the submission of false and fraudulent claims for home health services; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit, and the use and benefit of others, and to further the fraud.

**Manner and Means of the Conspiracy**

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **TERESA DE JESUS AVELLANEDA** and her co-conspirators submitted and caused the submission of claims to Medicare, via interstate wire communication, totaling approximately $1,755,154, which falsely and fraudulently represented that various health care benefits, primarily home health services, were medically necessary, prescribed by a doctor, and had been provided by Coral Home Care to Medicare beneficiaries.

5.      As a result of such false and fraudulent claims, Medicare, through its contractors, made over-payments funded by Medicare to Coral Home Care in the approximate amount of $1,084,785.

6.      **TERESA DE JESUS AVELLANEDA** and her co-conspirators used the proceeds of the heath care fraud for their personal use and benefit, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
## Health Care Fraud
## (18 U.S.C. § 1347)

1.      The General Allegations section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2.      From in or around April of 2015, through in or around July of 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## TERESA DE JESUS AVELLANEDA

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for the defendant and her accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for her personal use and benefit, and the use and benefit of others, and to further the fraud.

### The Scheme and Artifice

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and

artifice.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

5.     On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **TERESA DE JESUS AVELLANEDA,** in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, and representing that Coral Home Care provided home health services to Medicare beneficiaries pursuant to physicians' orders and prescriptions to beneficiaries who required home health services as set forth below:

| Count | Medicare Beneficiary | Approx. Date of Claim | Claim Number | Item Claimed; Approx. Amount Claimed |
|---|---|---|---|---|
| 2 | A.A. | 6/9/2016 | 21607100592907FLR | Home Health – physical therapy; $2,438 |
| 3 | L.R. | 6/13/2016 | 21616503798608FLR | Home Health – physical therapy; $2,438 |
| 4 | E.H. | 8/1/2016 | 21611200908407FLR | Home Health – physical therapy; $2,438 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations contained in this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which any of the defendant, **TERESA DE JESUS AVELLANEDA**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1347 or conspiracy to commit such offense, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.     The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of $1,084,785 in United States currency, which amount is equal to the gross proceeds traceable to the commission of the violations alleged in this Indictment and which may be sought as a forfeiture money judgment.

4.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7); and the procedures set forth at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZLAEZ
ACTING UNITED STATES ATTORNEY

CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

Teresa DeJesus Avellaneda,

_____ Defendant/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***
**Superseding Case Information:**

**Court Division:** (Select One)

[✓] Miami    [ ] Key West    [ ] FTL
[ ] WPB      [ ] FTP

New defendant(s)    [ ] Yes    [ ] No
Number of new defendants    _____
Total number of counts    _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No) **Yes**_____
   List language and/or dialect  Spanish_____

4. This case will take 7.00 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I     0 to 5 days         [ ]
   II    6 to 10 days        [✓]
   III   11 to 20 days       [ ]
   IV    21 to 60 days       [ ]
   V     61 days and over    [ ]

   (Check only one)
   Petty          [ ]
   Minor          [ ]
   Misdemeanor    [ ]
   Felony         [✓]

6. Has this case previously been filed in this District Court?  (Yes or No) **No**_____
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No) **No**_____
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**_____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**_____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**_____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**_____

_____ for:
CHRISTOPHER J. CLARK
Assistant United States Attorney
FLA Bar No.      588040

*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  **TERESA DE JESUS AVELLANEDA**

**Case No**: 

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**        Twenty (20) Years Imprisonment

Counts #: 2-4

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**        Ten (10) Years Imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**